IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CHERYL ASHIKE; LATANYA YAZZIE,<br><br>                    Plaintiff,<br>v.<br><br>MULLEN CRANE AND TRANSPORT, INC.; BROCK FARNWORTH,<br>                    Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' REBUTTAL REPORTS FROM DR. STIMAC, DR. KING and DR. BIGLER<br><br>Case No. 2:12-cv-0011<br><br>District Judge Dale A. Kimball<br><br>Magistrate Judge Brooke Wells |

District Judge Dale A. Kimball referred this case to Magistrate Judge Brooke C. Wells pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the Court is Defendants' Motion to Strike Plaintiff's Rebuttal Reports from Dr. Stimac, Dr. King and Dr. Bigler. ("Motion to Strike")[2] Oral argument on the Motion to Strike was held on November 27, 2013.[3] At the hearing, Plaintiffs were represented by Mr. Paul Barber and Defendants were represented by Mr. Michael Ford.[4] After taking the matter under advisement,[5] the Court has further considered the law, facts and arguments of counsel in relation to this Motion.  For the reasons set forth in more detail below, the Court GRANTS Defendant's Motion to Strike Plaintiffs' Rebuttal Reports from Dr. Stimac, Dr. King and Dr. Bigler.

---

[1] Docket no. 45.
[2] Docket no. 59.
[3] Docket no. 78.
[4] Id.
[5] Id.

**BACKGROUND**

This is personal injury action resulting from a motor vehicle accident that occurred near Milford, Utah in August, 2011.[6] Plaintiff Latanya Yazzie designated and submitted an expert report dated September 24, 2012 from neuropsychologist, Dr. Erin Bigler, Ph.D.[7] After examining Ms. Yazzie and examining medical records including a CT scan from Beaver Valley Hospital, Dr. Bigler opined Plaintiff Yazzie "sustained a mild traumatic brain injury in the August 5, 2011 accident."[8] Further Dr. Bigler opined

> [p]rimary physical complaints of daily headaches, chronic pains and sleep disturbance may significantly affect cognitive functioning and mood. These are common symptoms/complaints following a head injury and often a major factor in producing neurobehavioral and neurocognitive sequelae. …[I]t is recommended that these physical symptoms/problems be the focus of a comprehensive treatment program and then when under better control, return for neuropsychological follow-up.[9]

On June 10, 2013, Ms. Yazzie underwent a Rule 35 neuropsychological examination by David Weight, Ph.D.[10] According to Dr. Weight's report, he reviewed (1) a medical consultation with Lance Smith, M.D.; (2) Hospital and Clinic Records from Beaver Valley Hospital, Kayenta Health Center, Inscription House Health Center, IHHC Walk-In/Urgent Care Clinic; (3) Emergency Records from Beaver Valley Hospital and Milford Area EMS Services; (4) Neuroimaging Beaver Valley Hospital; and (5) Academic Records from Tse'yaato', Shonto Prep High School.[11] Dr. Weight opined "[t]here is no indication that suggests any residual brain injury from this accident.[12] Her continuing headaches may be secondary to cervical strain or some

---

[6] Compl., docket no. 2 at ¶ 1.
[7] Exh. 1, docket no. 59.
[8] Id.
[9] Id.
[10] Exh. 2, docket no. 59.
[11] Id.
[12] Id.

variation on her prior headache history which were aggravated by the impact."[13] Dr. Weight diagnosed Plaintiff at Axis I with a "Pain Disorder associated with both psychological factors and a chronic medication condition, chronic."[14] At Axis II, Dr. Weight diagnosed "Borderline Intellectual Functioning.[15] At Axis III, a history of migraine headaches and continuing headache complaints was diagnosed. Dr. Weight's report's also concludes

> [i]t is unclear whether her headaches can be managed better if she were in treatment. She has been unemployed much of her young life and is probably qualified for very few jobs based on her intellect and training. Headaches appear to be her only consistent complaint and memory complaints would seem consistent with her measured abilities.[16]

After Dr. Weight's report, Plaintiff submitted the reports of Dr. Gary K. Stimac, Ph.D, M.D. dated July 11, 2013[17] and Dr. Stuart King dated July 18, 2013.[18] Plaintiff also submitted a letter from Dr. Bigler dated July 15, 2013.[19]

**A.   Dr. Stimac's Report**

Dr. Stimac's report lists him as "Diagnostic Radiologist and his report is titled a "Medical Imaging Consultation."[20] Under the section titled "Materials Reviewed," Dr. Stimac states he reviewed

> …medical records from Beaver Valley Hospital, Utah EMS, the neuropsychology report by Dr. Bigler (9/25/12), and the police report. I have reviewed the deposition of Latanya Yazzie, and the relevant portions of the depositions of Cheryl Ashike and Joel Ashike. I have reviewed the responses to my office's Brain Trauma MRI Questionnaire.[21]

---

[13] Id.
[14] Id.
[15] Id.
[16] Id.
[17] Exh. 3, docket no. 59.
[18] Id.
[19] Id.
[20] Id.
[21] Id.

The scope of Dr. Stimac's Report is listed as "…review[ing] medical records and radiographic examinations of Latanya Yazzie, and to assess the relationship of the motor vehicle accident of 8/5/11 to brain injury."[22] In conjunction with his examination Dr. Stimac ordered Ms. Yazzie to undergo a MRI of her head.[23] After review of the MRI, Dr. Stimac opined that Ms. Yazzie sustained a closed head injury in the crash. Dr. Stimac further opined that Ms. Yazzie's condition is "…not typical for the alternative diagnoses of cerebrovascular disease, inflammation or demyelinating disease."[24] At the end of his report, Dr. Stimac comments "full assessment of neurological and neuropsychological symptoms is deferred to experts in those areas."[25]

### B.  Dr. King's Report

In a document titled "Independent Medical Evaluation" dated July 18, 2013, Dr. Stuart W. King, M.D.,[26] diagnosed Ms. Yazzie with "[r]esidual persistent post traumatic head and brain injury cephalgia and headache syndrome [and] residual chronic cognitive difficulties."[27] Dr. King states he reviewed the following reports: Utah Emergency Medical Service Patient Care Report, Dr. Lance Smith M.D.'s emergency room report, Dr. Bigler's Report, Dr. Weight's report and Dr. Stimac's report.[28] Dr. King also reviewed CT and MRI scans for Ms. Yazzie.[29] In the "Introduction Section" of his report, Dr. King states "I completed a history and physical exam with Latanya Yazzie on June 20, 2013 and have since reviewed all medical records

---

[22] Id.
[23] Id.
[24] Id.
[25] Id.
[26] Dr. King is a doctor of physical medicine and rehabilitation.  See docket no. 59 at p. 4, ¶ 12.
[27] Exh. 4, docket no. 59.  In addition, Dr. King's report states:  "August 5, 2011 multiple trauma secondary to motor vehicle accident, which left temporal head and mild traumatic brain injuries, coup-contrecoup type, associated with diffuse axonal injury and multiple small subarachnoid hemorrhages, as well as acute cervicothoracic and posterior scapular strain/sprain injuries; resolution of acute cervicothoracic and posterior scapular strain/sprain injuries without significant residual."
[28] Id.
[29] Id.

provided. An impairment rating has been derived, and recommendations given."[30] Dr. King recommended Ms. Yazzie undergo chronic pain and headache management which in Dr. King's opinion would be best managed by a pain treating physician.[31] Dr. King also agreed with Dr. Bigler that behavioral approaches would also be beneficial.[32] Finally, Dr. King provides the following cost estimates for Ms. Yazzie's treatment:

1. Initial evaluation with pain treating physiatrist or anesthesiologists, $350.
2. Medical follow-up appointments, monthly for one year: $1,800.
3. Quarterly appointments thereafter for lifetime, $600 per year.
4. Temporal nerve blocks, quarterly for lifetime, $600 per year.
5. One time treatment course of desensitization physical therapy, 3 times a week for two months or 24 sessions, $3,000.
6. Psychotherapy for behavioral approaches to pain and coping strategies for brain injury, initial evaluation followed by weekly psychotherapy for 3 months and monthly thereafter for one year, $12,000.
7. Follow-up neuropsychology testing and counseling, one-time $1,600.[33]

C. **Supplement to Dr. Bigler's Report.**

On July 15, 2013 Dr. Erin Bigler after receiving Dr. Stimac's & Dr. Weight's reports, submitted a "supplement report" in the form of a letter to Mr. Barber, Plaintiffs' attorney.[34] In this supplement, Dr. Bigler further opines "[c]learly, Latanya Yazzie sustained a mild traumatic brain injury."[35] With regard to Dr. Weight's evaluation, Dr. Bigler remarks, "[t]here is a major issue with regards to the neuropsychological test findings of our assessment of 2012 as well as the test findings of Dr. Weight. This has to do with the cultural and ethnic factors relating to testing as well as performance on measures of effort."[36] Dr. Bigler then opines that additional

---

[30] Id.
[31] Id.
[32] Id.
[33] Id.
[34] Exh. 5, docket no. 59.
[35] Id.
[36] Id.

5

information from those individuals that knew Ms. Yazzie before and after the accident, rather than making neuropsychological test comparisons would be helpful.[37]

## ANALYSIS

Defendants assert that Plaintiff's expert reports from Dr. Stimac, Dr. King and portions of the supplemental report authored by Dr. Bigler should be stricken because these reports are not rebuttal evidence but are independent expert opinions that do not rebut or contradict the reports of Defendants' expert in violation of Rule 26 of the Federal Rules of Civil Procedure.

Rule 26(a)(2)(D)(ii) of the Federal Rules of Civil Procedure states with regard to the time to disclose expert witness testimony, "**if the evidence is intended to solely contradict or rebut evidence on the same subject matter identified by another party** under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure."[38] Further, "[a] rebuttal expert report is not the proper place for presenting new arguments, unless presenting those arguments is substantially justified and causes no prejudice."[39]

While the case law especially in the 10th Circuit is rather sparse with regard to exactly what constitutes proper rebuttal evidence,[40] the Court finds as persuasive authority a case cited by Defendants' in support of this Motion. In Stanfield v. Dart,[41] the Court struck an expert report provided by Plaintiff's expert for not containing proper rebuttal evidence.[42] The Court reasoned that the "rebuttal" report provided by Plaintiff exceeded the requisite scope because the report failed to address Defendants' expert's conclusions, or methodology and failed to provide

---

[37] Id.
[38] F.R.C.P. 26(a)(2)(D)(ii)(emphasis added).
[39] 1-800 Contacts, Inc. v. LENS.com, Case No. 2:07-cv-591, 755 F.Supp.2d 1151 (D. Utah, Dec. 14, 2010)(citing Ebbert v. Nassau County, No. CV 05-5445(FB)(AKT), 2008 WL 4443238 at *13 (E.D.N.Y., Sept. 26, 2008)).
[40] The Court ordered the parties to submit further briefing on this issue specifically. See docket no. 70.
[41] No. 10 C 6569, 2013 WL 589222 at *3-4 (N.D. Ill. Feb. 14, 2013)(unpublished).
[42] Id.

any analysis with regard to the conclusions of Defendants' experts.[43]  Further, the Court found that Plaintiff's rebuttal report was an attempt to bolster Plaintiff's case-in-chief.[44]

   Similarly, the Court finds that Dr. Stimac and Dr. King's reports to be improper.  First, both reports fail to challenge the conclusions or methodology of Dr. Weight.  In fact, both reports fail to provide any analysis or address Dr. Weight's conclusions whatsoever.  The only mention of Dr. Weight comes by brief mention in Dr. King's report in which he states he has reviewed Dr. Weight's report.   In addition, the titles of Plaintiffs' experts' reports do not suggest they are providing rebuttal reports.  Rather, the titles of "Medical Imaging Consultation" and "Independent Medical Evaluation" suggest that these reports are being used to bolster Plaintiff's case-in-chief.   This is further evidenced by Dr. King providing an impairment rating analysis and also inclusion of cost estimates for treatment for Plaintiff Yazzie.  This is beyond the scope of the report of Dr. Weight who provided no cost estimates for Plaintiffs' treatment.

   Also, Dr. Stimac's report is beyond the allowable scope of Rule 26 because in response to a neuropsychologist's report, Dr. Stimac, a radiologist, orders a MRI of Plaintiff's brain which provides the main basis in reaching his conclusions.  At oral argument and in their briefs, Plaintiffs admit that a MRI was not ordered for Ms. Yazzie earlier on in the case for strategic reasons.  This in particular evidences to the Court that the Plaintiffs are attempting to use their rebuttal reports to improperly bolster their case-in-chief.   Thus, the Court finds the reports of Drs. Stimac and King to be in violation of the Rules of Civil Procedure because they exceed the scope of proper rebuttal evidence and are being used instead to bolster the Plaintiffs' case-in-chief.

---

[43] Id. at *4.
[44] Id.

As to Dr. Bigler's "supplemental report," Defendants challenge the first two paragraphs of this report. These paragraphs specifically address Dr. Stimac's and Dr. King's reports. Because the Court finds that Dr. Stimac's and Dr. King's reports are improper these portions of Dr. Bigler's supplemental report are to be stricken.

Further, although the terms "counter" and "rebuttal" reports have been used interchangeably in this case, particularly in the Scheduling Order, Rule 26(a)(2)(D)(ii) clearly contemplates "rebuttal" reports. In addition, while the definition in the Scheduling Order may have an alternative meaning as Plaintiff suggests, the local practice in this district is for rebuttal reports to be submitted. Therefore, Plaintiffs' arguments that the Scheduling Order contemplates the types of reports submitted by Drs. Stimac, King and Bigler are without merit.

Lastly, if these reports are not struck, the Court believes and the parties seem to concede, that Defendants would need to be given an opportunity to respond. The Court finds Defendants arguments with regard to not having adequate time to respond to Plaintiff's expert reports as well taken because the time for expert discovery has now lapsed. Although Plaintiffs have stated that they would be open to additional discovery, the Court finds this additional discovery past the designated deadline would be prejudicial to Defendants. This case is on the eve of trial and Defendants should not have to incur further expense due to Plaintiffs' rebuttal experts exceeding the allowable scope of their examinations. Therefore, the Court finds Plaintiffs arguments to be unpersuasive and GRANTS Defendant's Motion to Strike.

## **CONCLUSION & ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

8

1. Defendant's Motion to Strike Plaintiff's Rebuttal Reports from Dr. Stimac, Dr. King, and Dr. Bigler[45] is HEREBY GRANTED.

2. The reports of Dr. Stimac, Dr. King and portions cited in Defendant's Motion to Strike of as too Dr. Bigler's supplemental report are stricken.

      DATED this 8 January 2014.

                                              _____
                                              Brooke C. Wells
                                              United States Magistrate Judge

---

[45] Docket no. 59.