# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| CHERYL ASHIKE and LATANYA YAZZIE,<br><br>        Plaintiffs,<br><br>vs.<br><br>MULLEN CRANE AND TRANSPORT, INC., and BROCK FARNWORTH,<br><br>        Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:12CV11DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on several pre-trial motions in limine: Plaintiffs' Motion in Limine and For Sanctions Against Defendants for Lying in Discovery; Plaintiffs' Affirmative Motion in Limine; Defendants' Motion in Limine to Exclude the Testimony of Plaintiffs' Expert Roger Allen with Regard to the Utah Trucking Guide; and Defendants' Motion in Limine to Limit the Testimony of Retained Experts to Opinions Contained in the Experts' Reports or Depositions. On July 22, 2014, the court held a hearing on the motions. At the hearing, Plaintiffs were represented by Paul D. Barber and Forrest G. Buffington, and Defendants were represented by Michael L. Ford. The court heard oral argument and took the motions under advisement. The court has carefully considered all materials submitted by the parties and the law and facts relevant to the motions. Now being fully advised, the court enters the following Memorandum Decision and Order.

## DISCUSSION

**I. Plaintiffs' Motion in Limine and for Sanctions Against Defendants for Lying in Discovery**

Plaintiffs seek cross examination with respect to Defendants' alleged dishonesty regarding insurance coverage and Rule 37 sanctions for dishonesty in discovery. Defendants' initial disclosures stated that Mullen Crane had $2 million in insurance coverage. Defendants and Plaintiffs then entered into settlement discussions. Plaintiffs gave an offer for the $2 million limit, and Defendants refused to settle for that amount. Subsequently, Defendants' insurer got a new adjuster assigned to the case. The new adjuster discovered that there was an excess insurance policy also available with another $8 million in coverage. Defendants then disclosed it to Plaintiffs.

Plaintiffs allege that Defendants lied under oath about coverage because Defendants' initial disclosures did not mention the excess policy. Plaintiffs also assert that they were prejudiced in giving a $2 million offer. Defendants contend that they disclosed the information as soon as it learned of the excess coverage, they did not know about the excess coverage at the time of the mediation, and Plaintiffs were not prejudiced by the late disclosure because Defendants did not settle for the requested $2 million.

Plaintiffs, however, argue that Defendants' dishonesty affected their ability to negotiate for appropriate damages and Defendants should be precluded from introducing evidence on Plaintiffs' damages at trial. Plaintiffs also seek a jury instruction informing the jury that Defendants' lied under oath and the amounts of insurance available. In addition, Plaintiffs seek costs associated with Plaintiffs' settlement efforts–such as, Plaintiffs share of the settlement

conference, travel costs, and attorneys fees. Finally, Plaintiffs seek an order in limine allowing Plaintiffs to cross examine Defendants in front of the jury about their alleged dishonesty.

The evidence before the court does not support a finding that Defendants were dishonest. The fact that Defendants discovered additional coverage after their initial disclosures and a settlement conference is not evidence of dishonesty. The rules specifically contemplate that initial disclosures and other discovery matters will be supplemented throughout the litigation. It is not uncommon for new information to come to light during discovery. Defendants complied with the rules and disclosed the new coverage to Plaintiffs when Defendants learned of the coverage. The court finds no basis for sanctioning Defendants or for issuing an order in limine to address the issue based on a delayed finding regarding an additional policy.

Furthermore, the court does not find that Plaintiffs were prejudiced by Defendants' failure to discover the extent of insurance coverage. The parties did not successfully settle the case with the lower policy limit but there is no evidence that the amount of insurance coverage influenced Defendants' decisions at the settlement conference. If Defendants were unwilling to settle for $2 million, there is no reason to believe they would have been willing to settle for more. Moreover, the issue of failed settlement discussion are confidential and will not impact anything at trial.

Finally, the court notes that the introduction of insurance issues, when such issues are unnecessary, is inappropriate under Utah law. Utah law has long held that "the question of insurance is immaterial and should not be injected into the trial." *Robinson v. Hreinson*, 409 P.2d 121, 123 (Utah 1965). Although Plaintiffs claim that the issue could be admissible under Federal Rule of Evidence 411 for another purpose, the court has found that there is no evidence that the failure to find the excess policy is an issue of dishonesty. Thus, there are not grounds for

the admission of such evidence for other purposes and the admission of such evidence would be error. The court concludes that Plaintiffs' requests for sanctions and an order in limine are without merit. Accordingly, the court denies Plaintiff's motion in limine.

## II. Plaintiffs' Affirmative Motion in Limine

Plaintiffs' motion addresses three separate evidentiary issues for trial. The court will address each in turn.

### (1) Latanya Yazzie's MRI

Plaintiffs seek to use the results of an MRI study of Latanya Yazzie and a radiology report of Dr. Gary Stimac for purposes of cross-examining Defendant's neuropsychological expert. Plaintiffs also seek an order allowing Dr. Erin Bigler to testify regarding how those studies supplemented his opinion regarding Latanya's brain injury

Latanya Yazzie had a brain MRI on July 1, 2013. Dr. Stimac read her MRI along with her emergency room CT scan. On July 11, 2013, he reported that he found uncontested signs of traumatic brain injury in the DTI and MRI imaging. Plaintiffs attempted to use Dr. Stimac's report as rebuttal evidence to Defendants' neuropsychologist Dr. Weight. Defendants moved to strike Dr. Stimac's report, and Magistrate Judge Wells granted the motion.

Magistrate Judge Wells determined that Dr. Stimac's report exceeded the scope of proper rebuttal evidence and was being used instead to bolster Plaintiff's case-in-chief when Plaintiffs had previously decided not to have a brain MRI done. Plaintiffs have objected to her ruling, but the court concludes that Magistrate Judge Wells's ruling was correct.

Regardless of the court's ruling on the objection, Plaintiffs ask the court to allow them to use Dr. Stimac's MRI studies and report for cross-examination purposes of Defendants' expert

Dr. Weight. However, Plaintiffs strategically decided not to do a brain MRI to support their case-in-chief. If Plaintiffs had done the MRI to support their case-in-chief, they ran the risk that the results would be unfavorable and need to be disclosed. Instead, Plaintiffs waited until such risk was gone, did the MRI, and then attempted to submit it on rebuttal. The court agrees with Magistrate Judge Wells's determination that the MRI and report were not proper rebuttal evidence but, rather, a strategic attempt to bolster Plaintiffs' case-in-chief. Dr. Stimac's evidence does not discuss Dr. Weights' report or methodology. Thus, it is not rebuttal evidence. Rather, it raises entirely new evidence that would require Defendants to retain an entirely new expert. Defendant's expert Dr. Weight is a neuropsychologist, not a radiologist. His opinions are not medical or based on medical imaging. They are based on a neuropsychological test, school records, and medical records. Plaintiffs' evidence, therefore, is not proper rebuttal evidence.

The other basis for Magistrate Judge Wells' decision was that the rebuttal evidence was untimely because expert discovery was closed and trial was close at hand. Because of two delays in the trial date, Plaintiffs now argue that Defendants have had the evidence for a year. However, such an argument is disingenuous. Defendants moved to strike the evidence and the motion was granted. The trial was then delayed twice. If the parties had attempted to reach an agreement about reopening discovery during the delays in the trial, Plaintiffs may have some support for their argument. However, at present, there is no basis for the court to find that Defendants' expert has seen the MRI. Moreover, there is no evidence before the court that a neuropsychologist would be qualified to opine on an MRI. Thus, cross examination on an MRI or radiology report would yield very little probative evidence.

Plaintiffs also ask the court to allow Dr. Bigler to testify as to the MRI. However, as

5

stated above, there is no evidence before the court that Dr. Bigler would be qualified to testify as to the MRI. Rather, he would merely be stating that a radiologist agreed with his opinion. Such testimony is improper and a back door way of getting evidence into trial that cannot come in through the front door. Plaintiffs made the strategic decision to use Dr. Erin Bigler as their expert. Dr. Weight and Dr. Bigler have the same specialty. Allowing Dr. Bigler to state that his opinion was later supported by a doctor of a different specialty is improper rebuttal evidence. Accordingly, the court denies Plaintiffs' motion to introduce the MRI of Latanya Yazzie.

**(2) Illustrations of Cheryl Ashike's Brain MRI**

Plaintiffs seek to use the illustrations made by Dr. Tracy Abildskov of Cheryl Ashike's brain MRI. Plaintiffs disclosed these three-dimensional color illustrations as part of Dr. Erin Bigler's report. Dr. Bigler's report states that they accurately demonstrate the location of pathology. Plaintiffs want an affirmative ruling that they can use these illustrations at trial without further testimony by Tracy Abildskov.

Defendants, however, do not believe that Plaintiffs' motion lays an adequate foundation for the admission of the images at trial and assert that a proper foundation would need to be laid at trial. The court agrees with Defendants that Dr. Abildskov needs to lay a foundation for the illustrations. Based on the parties' arguments, the court believes that such testimony could be relatively brief. However, without Dr. Abildskov's testimony, Plaintiffs run the risk of Dr. Bigler not being able to lay a proper foundation and the illustrations being excluded altogether. The court does not have the necessary information before it this time to conclude that Dr. Bigler can explain Dr. Abildskov's process or the accuracy and veracity of his work. Defendants should have the opportunity to question the validity of the illustrations and the process used to create

6

them.

Although the court concludes that Dr. Abildskov's testimony is necessary to lay a proper foundation, the court encourages the parties to attempt to reach a stipulation as to the foundation for such evidence prior to trial, if possible. However, if the parties are unable to reach such agreement, the court believes that Dr. Abildskov's foundational testimony is necessary. Accordingly, Plaintiffs' motion is denied.

### (3) Oversize Permit and Utah Trucking Guide

Plaintiffs seek to introduce the application for oversize permits under which Defendants were operating at the time of the crash and the Utah Trucking Guide that Defendants agreed to follow in obtaining that permit.

Defendants admit that they were bound by all the rules and regulations governing oversize permits. The oversize permit that was in the truck at the time of the accident states that "[t]he permit holder or authorized agent acknowledges that he/she has read and understands all the laws and regulations governing the use of this permit." Chapter 16 of the Utah Trucking Guide states that "[t]he applicant or permittee, as a condition for obtaining an oversize permit, shall assume all responsibility for crashes, including injury to any persons or damage to public or private property caused by operations."

This court has already decided on summary judgment that the language of the Utah Trucking Guide does not apply to the determination of liability in this case. The court has already ruled that the guide pertains to the relationship between Defendants and UDOT and is irrelevant to Defendants' potential liability to third parties. The Utah Trucking Guide does not displace Utah's comparative fault system. Nonetheless, the parties can make reference to the fact

that Defendants were operating under a valid oversize use permit and that they agreed to be familiar with all rules and regulations pertaining to that permit. However, the language from the Utah Trucking Guide that Plaintiffs seek to get before the jury is irrelevant to Defendant's liability to Plaintiffs, would serve only to confuse the jury, and is not admissible. Therefore, the court concludes that Plaintiffs can introduce the fact that an oversize permit was obtained and the language contained on the oversize permit. However, the language from the Utah Trucking Guide regarding the responsibility for crashes is not admissible. In addition, the court advises Plaintiffs' that they are not allowed to make any references in front of the jury to their position that the Utah Trucking Guide makes Defendants more liable to Plaintiffs than Utah's statutory comparative negligence scheme provides. The court has already ruled that such position is contrary to the law and Plaintiffs must abide by that ruling.

### III. Defendants' Motion in Limine to Exclude the Testimony of Plaintiffs' Expert Roger Allen With Regard to the Utah Trucking Guide

Defendants seek an order from the court excluding the testimony of Mr. Allen regarding his opinions with respect to the Utah Trucking Guide and its application to this case. Plaintiffs filed a Motion for Partial Summary Judgment arguing that Mullen Crane should be held liable for the accident as a matter of law based on the language of the Utah Trucking Guide. The court denied Plaintiffs' Motion for Partial Summary Judgment, concluding that the Utah Trucking Guide did not displace Utah's comparative fault system.

Plaintiffs retained Mr. Roger Allen as an expert. Mr. Allen testified in his deposition that Defendants had to comply with the Utah Trucking Guide while operating under an oversize use permit and the Utah Trucking Guide states that Mullen Crane must take responsibility for this

collision. His report states that "Mullen Crane agreed by obtaining an oversize load permit through the State of Utah they acknowledge they had read and understood all the laws and regulations governing the use of the permit, including that they accept responsibility for all crashes."

Mr. Allen's testimony and report are contrary to this court's prior ruling. In denying Plaintiffs' Motion for Partial Summary Judgment, the court has already ruled that the Utah Trucking Guide has no application in establishing liability against Mullen Crane. The Order constitutes the law of the case. The court found the Utah Trucking Guide to be irrelevant in determining the liability of Defendants to third parties. The Utah Trucking Guide addressed liability between the permit holder and UDOT. It does not displace Utah's comparative fault system for determining negligence. Mr. Allen cannot contradict what the court has already ruled. It is the province of the court to opine on the legal duties of the parties. A trucking safety expert is not qualified to testify as to relationship between the Utah Trucking Guide and Utah's comparative fault system. Such matters are issues of law which are decided by the court.

To the extent that Mr. Allen has opinions regarding trucking safety that is not tied to whether Defendants have assumed liability to third parties by virtue of operating under an oversize permit, he can testify as to industry standards and matters within his expertise. Thus, the court's ruling does not exclude him as a witness altogether. However, he cannot attempt to give an opinion on the state of the law or liability between the parties. Accordingly, Defendants' motion in limine is granted.

**IV. Defendants' Motion in Limine to Limit the Testimony of Retained Experts to Opinions Contained in their Experts' Reports or Depositions**

Defendants seek an order precluding any retained experts from offering opinions which

are not set forth in their respective reports or depositions. Defendants seek to ensure that the parties are not ambushed by previously undisclosed expert opinions at trial. Plaintiffs argue that Defendants' motion should be denied because it lacks specificity.

Defendants' motion reiterates the rule relating to expert witness disclosure but points to no specific evidence to which they object. The court and parties agree that under the rules opinions not previously disclosed will not be admissible. In *Means v. Letcher*, 51 Fed. Appx. 281, 284 (10th Cir. 2002), the Tenth Circuit referred to a motion in limine that excluded "from trial any and all expert opinions offered by plaintiffs which were not set forth in the expert's Rule 26 report or deposition." *Id.* at 283.

Although the court recognizes that the Tenth Circuit did not object to such a broadly phrased motion in limine, the court agrees with Plaintiffs that Defendants have not met their burden of establishing that any specific evidence is inadmissible. In *Maggette v. BL Development Corp.*, 2011 WL 2134578, *4 (N. D. Miss), the court explained that "[t]he purpose of motions in limine is not to re-iterate matters which are set forth elsewhere in the Rules of Civil Procedure or Rules of Evidence, but, rather to identify specific issues which are likely to arise at trial, and which, due to their complexity or potentially prejudicial nature, are best addressed in the context of a motion in limine."

Defendants motion is not concerned with a particular witness, only experts in general. The court can caution the parties to follow the rules but there is no real indication that anyone is planning to disregard the rules. Defendants should have identified which expert witness they have concerns with and what additional testimony they think that witness may try to give at trial. Because there is no specific witness or evidence at issue, the court denies Defendants' motion in

limine as being too vague.

## CONCLUSION

Based on the above reasoning, Plaintiffs' Motion in Limine and For Sanctions Against Defendants for Lying in Discovery is DENIED; Plaintiffs' Affirmative Motion in Limine is DENIED IN PART AND GRANTED IN PART as discussed above; Defendants' Motion in Limine to Exclude the Testimony of Plaintiffs' Expert Roger Allen with Regard to the Utah Trucking Guide is GRANTED; and Defendants' Motion in Limine to Limit the Testimony of Retained Experts to Opinions Contained in the Experts' Reports or Depositions is DENIED.

DATED this 23rd day of July, 2014.

BY THE COURT:

_____
Dale A. Kimball,
United States District Judge